Rosemary M. Rivas (SBN 209147)
rrivas@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Plaintiff*

*[Additional Counsel on signature page.]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE VLADIMIR GUSINSKY REV. TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JIVE SOFTWARE, INC., TONY ZINGALE, ELISA STEELE, MARGARET BREYA, STEVE DARCY, ROBERT FRANKFURT, PHIL KOEN, TOM REILLY, CHUCK ROBEL, GABRIELLE TOLEDANO, BALAJI YELAMANCHILI, AUREA, INC., ESW CAPITAL, LLC, WAVE SYSTEMS CORP., and JAZZ MERGERSUB, INC.,<br><br>Defendants. | Case No. 5:17-cv-02836<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

Plaintiff, by and through its attorneys, alleges upon personal knowledge as to itself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1. This action stems from a proposed transaction announced on May 1, 2017 (the "Proposed Transaction"), pursuant to which Jive Software, Inc. ("Jive" or the "Company") will be acquired by affiliates of Aurea, Inc. and ESW Capital, LLC.

2. On April 30, 2017, Jive's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Wave Systems Corp. and Jazz MergerSub, Inc. (collectively with Aurea, Inc. and ESW Capital, LLC, "Aurea"). Pursuant to the terms of the Merger Agreement, Aurea commenced a tender offer, set to expire on June 9, 2017, and stockholders of Jive will receive $5.25 in cash for each share of Jive common stock.

3. On May 12, 2017, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Jive common stock.

9. Defendant Jive is a Delaware corporation and maintains its principal executive

1  offices at 300 Orchard City Drive, Suite 100, Campbell, California 95008. Jive's common stock
2  is traded on the Nasdaq GS under the ticker symbol "JIVE."

3  10.   Defendant Tony Zingale ("Zingale") is a director and Chairman of the Board of
4  Jive.

5  11.   Defendant Elisa Steele ("Steele") is a director of Jive and has served as Chief
6  Executive Officer ("CEO") since February 2015.

7  12.   Defendant Margaret Breya ("Breya") is a director of Jive. According to the
8  Company's website, Breya is a member of the Audit Committee.

9  13.   Defendant Steve Darcy ("Darcy") is a director of Jive. According to the
10 Company's website, Darcy is a member of the Audit Committee.

11 14.   Defendant Robert Frankfurt ("Frankfurt") has served as a director of Jive since
12 March 2017.

13 15.   Defendant Phil Koen ("Koen") is a director of Jive. According to the Company's
14 website, Koen is a member of the Compensation Committee and the Nominating and
15 Governance Committee.

16 16.   Defendant Tom Reilly ("Reilly") is a director of Jive. According to the
17 Company's website, Reilly is a member of the Compensation Committee.

18 17.   Defendant Chuck Robel ("Robel") is a director of Jive. According to the
19 Company's website, Robel is Chair of the Audit Committee and Chair of the Nominating and
20 Governance Committee.

21 18.   Defendant Gabrielle Toledano ("Toledano") has served as a director of Jive since
22 November 2015. According to the Company's website, Toledano is Chair of the Compensation
23 Committee and a member of the Nominating and Governance Committee.

24 19.   Defendant Balaji Yelamanchili ("Yelamanchili") has served as a director of Jive
25 since August 2016.

26 20.   The defendants identified in paragraphs 9 through 18 are collectively referred to
27 herein as the "Individual Defendants."

28 21.   Defendant Aurea, Inc. acquires software companies.

3
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

22.     Defendant ESW Capital, LLC is a Delaware limited liability company and the parent company of Wave Systems Corp.

23.     Defendant Wave Systems Corp. is a Delaware corporation, an affiliate of ESW Capital, LLC, and a party to the Merger Agreement.

24.     Defendant Jazz MergerSub, Inc. is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action on behalf of itself and the other public stockholders of Jive (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable. As of April 26, 2017, there were approximately 79,215,615 shares of Jive common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

28.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

29.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

31. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

32. Jive is the leader in accelerating workplace digital transformation for organizations.

33. The Company provides industry-leading Interactive Intranet and Customer Community solutions that connect people, information, and ideas to help businesses outpace their competitors.

34. With more than 30 million users worldwide and customers in virtually every industry, Jive is consistently recognized as a leader by analyst firms, including Gartner Inc., Ovum, and Aragon Research.

35. On February 7, 2017, the Company issued a press release wherein it reported its financial results for its fourth quarter and year ended December 31, 2016.

36. For the fourth quarter, the Company reported that total revenue was $51.7 million, which was an all-time quarterly record and represented an increase of 3% on a year-over-year basis. Within total revenue, product revenue was $47.6 million for the fourth quarter, an increase of 2% on a year-over-year basis. Professional services revenue for the fourth quarter was $4.1 million, an increase of 14% on a year-over-year basis. GAAP gross profit for the fourth quarter was $36.1 million compared to $31.5 million for the fourth quarter of 2015. Non-GAAP gross profit was $37.0 million for the fourth quarter, an increase of 12% year-over-year. GAAP income from operations for the fourth quarter was $0.6 million, compared to a GAAP loss from operations of $7.6 million for the fourth quarter of 2015. Non-GAAP income from operations was $5.1 million for the fourth quarter, compared to a non-GAAP loss from operations of $2.9 million for the fourth quarter of 2015. GAAP net income for the fourth quarter was $0.9 million, compared to a GAAP net loss of $8.5 million for the same period last year. GAAP net income per diluted share for the fourth quarter was $0.01, compared to a GAAP

net loss per diluted share of $0.11 for the same period last year. Non-GAAP net income for the fourth quarter was $5.4 million, compared to a non-GAAP net loss of $3.9 million for the same period last year. Non-GAAP net income per diluted share for the fourth quarter was $0.07, compared to a non-GAAP net loss per diluted share of $0.05, for the same period last year.

37. For the full year 2016, the Company reported that total revenue was $204.1 million, which was an all-time annual record and an increase of 4% on a year-over-year basis. Product revenue was $187.3 million for 2016, an increase of 4% on a year-over-year basis. Professional services revenue for 2016 was $16.8 million, an increase of 7% on a year-over-year basis. GAAP gross profit was $136.7 million for 2016 compared to $123.6 million for 2015. Non-GAAP gross profit was $141.2 million for 2016 representing a year-over-year increase of 8%. Non-GAAP income from operations was $8.5 million for 2016, compared to a non-GAAP loss from operations of $9.4 million for 2015. Non-GAAP net income for 2016 was $8.3 million, compared to non-GAAP net loss of $10.8 million for 2015. Non-GAAP net income per diluted share for 2016 was $0.10, compared to a non-GAAP net loss per diluted share of $0.14 for 2015.

38. Jive also reported a number of business highlights from 2016 in the February 7, 2017 press release. For example, the Company achieved new customer wins with Canadian Imperial Bank of Commerce, Carlson Wagonlit Travel, Dialog Semiconductor, Electric Paper Evaluationssysteme GmbH, Elementis Global, Hospice of The Bluegrass, Inc., Iberley, Massage Envy Franchising, LLC, New Era Cap Company, Pax8, PubMatic, Inc., Seattle Mariners, and State Compensation Insurance Fund, among others. Jive also expanded or renewed customer relationships with Akamai Technologies, Athenahealth, Inc., Cerner Corporation, Ciena Corporation, Comcast, Cypress Semiconductor Corporation, Fidelity Investments, GAP, Harvard Pilgrim Healthcare, Hitachi Data Systems Corp., Humana, Informatica, Inland Empire Health Plan, Intarcia Therapeutics, Intel Security, IQNavigator, KIABI, lululemon athletica inc., MedAmerica, Mentor Graphics, Nokia Siemens Network, ServiceNow, Skechers U.S.A., Inc., Spectrum Health, StMicroelectronics, Sunrun, Telus Communications, VeriSign, Inc., Vimpelcom Eurasia, Virgin Media Limited, and Zebra Technologies, among others.

39. The Company also reported that it is transitioning its cloud infrastructure to Amazon Web Services ("AWS"), which will enable the Company to take its cloud capabilities to the next level at a lower cost.

40. Further, Jive was ranked as a Leader in The Forrester Wave™: Enterprise Collaboration, Q4 2016 report, which analyzed the state of the market and evaluated nine of the most significant vendors. One of four Leaders in this evaluation, Jive received the highest possible score in the "innovation and market approach" criterion.

41. Moreover, Jive was ranked as a Leader in Ovum's Employee Engagement, Collaboration and Productivity Report. Ovum, a leading global technology research and advisory firm, evaluated several vendors for the report and recognized the Jive Interactive Intranet solution for its extensive range of business and IT management features, as well as the product's overall market impact.

42. With respect to the results, Individual Defendant Steele commented:

> Strong execution resulted in another quarter that exceeded our expectations as we achieved record revenue, continued to improve profitability, increased cash flow from operations and gained momentum across the business[.] GAAP income from operations for the fourth quarter was $0.6 million, an increase of $8.2 million compared to one year ago. Non-GAAP operating income was $5.1 million, and represents the third quarter in a row that we have delivered on our commitment to operate within a sustainably profitable non-GAAP operating model. In addition, we generated $9.8 million in positive cash flow from operations compared to negative $4.2 million in the fourth quarter last year.
>
> Based on the transformation work we did in 2016 to realign the company, we are strategically poised for success as we enter 2017. We have made great strides in our operational excellence initiatives, and have positioned Jive's unique value proposition in the market to solve the growing problems of digital fragmentation across the enterprise workplace. We have stabilized the business, and we are vigorously building the foundation for future growth while maintaining a disciplined cost structure. We are confident that we are doing all the right things to generate increased demand for our products, as well as drive long-term value for both customers and shareholders.

43. Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which Jive will be acquired for inadequate consideration.

44. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and

7
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 5.2(a) and (b) of the Merger Agreement state:

> (a) The Company and its Subsidiaries shall (i) immediately cease any and all existing discussions or negotiations with any Persons conducted heretofore with respect to any Acquisition Proposal, and (ii) request, to the extent permitted by any confidentiality agreement executed in connection with a potential Acquisition Transaction, that any Persons who have received from the Company or any of its Subsidiaries or any of its Representatives any confidential information in connection with a potential Acquisition Transaction that such Persons promptly return or destroy any such confidential information in accordance with the terms of any such confidentiality agreement.
>
> (b) Subject to Section 5.2(c), at all times during the period commencing with the execution and delivery of this Agreement and continuing until the earlier to occur of the termination of this Agreement pursuant to Article VII and the Effective Time, the Company and its Subsidiaries shall not, nor shall they authorize or knowingly permit any of their respective directors, officers or other employees, controlled affiliates, or any investment banker, attorney or other authorized agent or representative retained by any of them (collectively, "Representatives") to, directly or indirectly, (i) solicit, initiate or knowingly induce the making, submission or announcement of, or knowingly encourage, facilitate or assist, an Acquisition Proposal, (ii) furnish to any Person (other than Parent, Acquisition Sub or any Representatives or designees of Parent or Acquisition Sub) any non-public information relating to the Company or any of its Subsidiaries, or afford to any Person (other than Parent, Acquisition Sub or any designees of Parent or Acquisition Sub) access to the business, properties, assets, books, records or other non-public information, or to any personnel, of the Company or any of its Subsidiaries, in each such case, with the intent to induce the making, submission or announcement of, or the intent to encourage, facilitate or assist, an Acquisition Proposal or any inquiries or the making of any proposal that would reasonably be expected to lead to an Acquisition Proposal, (iii) participate or engage in discussions or negotiations with any Person with respect to an Acquisition Proposal, (iv) enter into any Contract contemplating or otherwise relating to an Acquisition Transaction (other than an Acceptable Confidentiality Agreement) or (v) take any action to render any provision of any "fair price," "moratorium," control share acquisition," business combination," or other similar anti-takeover statute (including Section 203 of the DGCL) or any restrictive provision of any applicable anti-takeover provision in the Company's organizational documents, in each case inapplicable to any Person (other than Parent, Acquisition Sub or any of their affiliates) or any Acquisition Proposal (and to the extent permitted thereunder, the Company shall promptly take all steps necessary to terminate any waiver that may have been heretofore granted to any Person or Acquisition Proposal under any such provisions). Any breach of the foregoing provisions of this Section 5.2 by any of the Subsidiaries of the Company or the Company's or such Subsidiaries' Representatives shall be deemed to be a breach by the

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Company.

45. Further, the Company must promptly advise Aurea of any proposals or inquiries received from other parties. Section 5.2(e) of the Merger Agreement states:

> (e) In addition to the obligations of the Company set forth in Section 5.2(b), the Company shall promptly (and in any event within 24 hours) notify Parent if any director or executive officer of the Company becomes aware of any receipt by the Company of (i) of any Acquisition Proposal, (ii) any request for information that would reasonably be expected to lead to an Acquisition Proposal, or (iii) any inquiry with respect to, or which would reasonably be expected to lead to, any Acquisition Proposal, the terms and conditions of such Acquisition Proposal, request or inquiry, and the identity of the Person or group making any such Acquisition Proposal, request or inquiry. The Company shall keep Parent reasonably informed of the status and terms of any such Acquisition Proposal, request or inquiry.

46. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Aurea a "matching right" with respect to any "Superior Proposal" made to the Company. Section 6.3(a) of the Merger Agreement provides:

> (a) Neither the Company Board nor any committee thereof shall (x) withhold, withdraw, amend or modify in a manner adverse to Parent, or publicly propose to withhold, withdraw, amend or modify in a manner adverse to Parent, the Company Board Recommendation or (y) approve, endorse or recommend an Acquisition Proposal (each of clauses (x) and (y), a "Company Board Recommendation Change"); provided, however, that a "stop, look and listen" communication by the Company Board to the Company Stockholders pursuant to Rule 14d-9(f) of the Exchange Act, or any substantially similar communication, shall not be deemed to be a Company Board Recommendation Change. Notwithstanding the foregoing or anything to the contrary set forth in this Agreement, at any time prior to the Acceptance Time, the Company Board may effect a Company Board Recommendation Change if the Company Board and/or any authorized committee thereof shall have determined in good faith (after consultation with outside legal counsel) that the failure to effect a Company Board Recommendation Change would reasonably be expected to be inconsistent with its fiduciary duties; provided, however, that in the event that:
>
> (i) the Company shall have received a Superior Proposal, the Company Board may effect a Company Board Recommendation Change if and only if: (A) the Company Board and/or any authorized committee thereof shall have determined in good faith (after consultation with outside legal counsel) that the failure to enter into a definitive agreement relating to such Superior Proposal would reasonably be expected to be inconsistent with its fiduciary duties; (B) the Company shall have delivered to Parent a Superior Proposal Notice (it being agreed that the Superior Proposal Notice and any amendment or update to such notice and the determination to so deliver such notice, or update or amend public disclosures with respect thereto shall not constitute a Company Board Recommendation Change for purposes of this Agreement); (C) if requested by Parent, the Company shall have made its Representatives available to discuss with

|   |   |
|---|---|
| 1 | Parent's Representatives any proposed modifications to the terms and conditions of this Agreement during the period beginning at 5:00 p.m. Pacific Time on the day of delivery by the Company to Parent of such Superior Proposal Notice and ending at 5:00 p.m. Pacific Time on the fourth (4th) Business Day following the day of such delivery so that the Acquisition Proposal that is the subject of the foregoing notice is no longer a Superior Proposal (it being understood and agreed that with respect to any material amendment to any Acquisition Proposal that is the subject of a previously delivered Superior Proposal Notice, the Company shall have delivered to Parent a Proposal Amendment Notice, and shall have made its Representatives available to discuss with Parent's Representatives any proposed modifications to the terms and conditions of this Agreement during the period beginning at 5:00 p.m. Pacific Time on the day of delivery by the Company to Parent of such Proposal Amendment Notice and ending at 5:00 p.m. Pacific Time on the second (2nd) Business Day following the day of such delivery); and (D) if Parent shall have delivered to the Company during such four (4) Business Day period (or two Business Day period with respect to a Proposal Amendment Notice) a written, binding and irrevocable offer to modify the terms of this Agreement (which is set forth in a definitive written amendment to this Agreement executed by Parent and Acquisition Sub and delivered to the Company), the Company Board and/or any authorized committee thereof shall have determined in good faith, after considering the terms of such offer by Parent, that the Superior Proposal giving rise to such Superior Proposal Notice (or Proposal Amendment Notice) continues to be a Superior Proposal[.] |

47. Further locking up control of the Company in favor of Aurea, the Merger Agreement provides for a "termination fee" of $10 million, payable by the Company to Aurea if the Individual Defendants cause the Company to terminate the Merger Agreement.

48. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

49. Additionally, each of the members of the Board and the named executive officers of the Company entered into support agreements, pursuant to which they have agreed to tender their Company shares in the tender offer. Accordingly, such shares are already locked up in favor of the merger.

50. The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

51. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

52. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable

business, and future growth in profits and earnings.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

53. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

54. The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

55. First, the Solicitation Statement omits material information regarding the Company's financial projections and the financial analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in support of its so-called fairness opinion.

56. With respect to Jive's financial projections, the Solicitation Statement fails to disclose: (i) unlevered free cash flow and its constituent line items; and (ii) the timing and nature of the "periodic[]" updates to the projections during the process leading up to the Merger Agreement.

57. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the estimated unlevered free cash flows for the Company for the period from the second quarter of 2017 through the fourth quarter of 2017 and each of the calendar years 2018 through 2022, and corresponding definition and line items; (ii) the range of terminal values for the Company; and (iii) the inputs underlying the discount rate range of 8.17% to 10.55%.

58. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Solicitation Statement fails to disclose: (i) calendar year 2018 net cash estimates; and (ii) the inputs underlying the discount rate of 9.36%.

59. With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Morgan Stanley in the analysis.

60. With respect to Morgan Stanley's *Precedent Premia Analysis*, the Solicitation Statement fails to disclose: (i) the transactions observed by Morgan Stanley in the analysis; and

(ii) the premiums for such transactions.

61. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

62. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "Item 4. The Solicitation or Recommendation."

63. Second, the Solicitation Statement fails to disclose whether any non-disclosure agreements executed by Jive and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

64. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

65. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "Item 4. The Solicitation or Recommendation."

66. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Jive's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. Section 14(e) of the 1934 Act states, in relevant part, that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

69. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

70. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

71. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

72. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

73. The omissions in the Solicitation Statement are material in that a reasonable stockholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

74. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

75. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

76. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

77. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

78. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79. Section 14(d)(4) of the 1934 Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

80. Rule 14d-9(d) states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

81. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

82. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

83. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

84. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Aurea)**

85.   Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

86.   The Individual Defendants and Aurea acted as controlling persons of Jive within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Jive and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

87.   Each of the Individual Defendants and Aurea was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

88.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly connected with and involved in the making of the Solicitation Statement.

89.   Aurea also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

90.   By virtue of the foregoing, the Individual Defendants and Aurea violated Section 20(a) of the 1934 Act.

91.   As set forth above, the Individual Defendants and Aurea had the ability to exercise control over and did control a person or persons who have each violated Section 14(e)

of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

92.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

93.   Plaintiff and the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.   Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.   Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 17, 2017                **LEVI & KORSINSKY LLP**

By: */s/ Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Plaintiff*

1  OF COUNSEL:

2  **RIGRODSKY & LONG, P.A.**
Brian D. Long (to be admitted *pro hac vice*)
3  Gina M. Serra (to be admitted *pro hac vice*)
2 Righter Parkway, Suite 120
4  Wilmington, DE 19803
Telephone: (302) 295-5310
5  Facsimile: (302) 654-7530

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF PLAINTIFF

I, Vladimir Gusinsky, Trustee for The Vladimir Gusinsky Rev. Trust ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the Jive Software, Inc. (NasdaqGS: JIVE) security that is the subject of this action during the class period is/are as follows:

| PURCHASES | | | SALES | | |
|---|---|---|---|---|---|
| Buy Date | Shares | Price per Share | Sell Date | Shares | Price per Share |
| 10/5/12 | 68 | $15.00 | | | |
| | | | | | |
| | | | | | |
| | | | | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.  During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiffs *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of May, 2017.

_____
Vladimir Gusinsky